IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY SCHUFREIDER,<br>Plaintiff, | CIVIL ACTION |
| v. | |
| COLONIAL LIFE AND ACCIDENT<br>INSURANCE COMPANY,<br>UNUM INSURANCE COMPANY OF<br>AMERICA and<br>LUIS MARTINEZ,<br>Defendants. | NO. 24-5037 |

HODGE, J.                                                                                          December 17, 2025

## MEMORANDUM

In Plaintiff Anthony Schufreider's ("Plaintiff") Amended Complaint against Defendants Unum Insurance Company of America ("Unum") and Colonial Life and Accident Insurance Company ("Colonial Life") (collectively "Defendants"), he brings claims of (1) age discrimination under the Age Discrimination in Employment Act ("ADEA") (Count I); and (2) disability discrimination (Count II), failure to provide reasonable accommodations (Count III), retaliation (Count IV), and unlawful interference with rights (Count V) under the Americans with Disabilities Act ("ADA"). (ECF No. 15.) Presently before the Court is Defendants' Motion to Dismiss ("Motion") (ECF No. 17) Counts III, IV, and V (ECF No. 20) and Plaintiff's response in opposition. (ECF No. 19.) For the reasons that follow, Defendants' Motion is granted.

I.      BACKGROUND[1]

In March of 2023, Plaintiff began working for Colonial Life, a subsidiary of Unum, as a regional broker manager. (ECF No. 15 ¶ 17.) Upon being hired, Plaintiff informed Colonial Life

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

that he suffered from "severe ADHD," which impacts his ability to focus, manage his time, prioritize, and perform other life activities. (*Id.* ¶¶ 19, 27.) In turn, Colonial Life put Plaintiff on a "Developmental Plan" to assist him with scheduling and planning. (*Id.* ¶ 37.) Plaintiff's immediate supervisor during his employment was Luis Martinez ("Martinez"), who allegedly "scoffed" at Plaintiff when he told Martinez about his ADHD. (*Id.* ¶¶ 22, 25, 85.)

In November 2023, Martinez—without giving a reason why—placed Plaintiff on a thirty-day performance improvement plan ("PIP"), which was slated to end on December 8, 2023. (*Id.* ¶¶ 35–36, 64.) On November 24, 2023, Plaintiff reached out to the Employee Assistance Program ("EAP") to inform them of his disability and that he did not know why he was placed on the PIP. (*Id.* ¶¶ 38–39.) Specifically, he told EAP that he felt like he was being targeted and that he lacked guidance on what he needed to do to satisfy the PIP. (*Id.* ¶¶ 40–41.) Plaintiff ultimately sought therapy through the EAP that same day to assist with his ADHD. (*Id.* ¶¶ 86–87.) Although the EAP informed Plaintiff that he would be referred to a psychological facility for his ADHD, this never occurred. (*Id.* ¶ 89.)

On December 4, 2023, Plaintiff and Martinez reviewed Plaintiff's PIP together. (*Id.* ¶ 43.) Later that same week, Plaintiff asked Martinez to update the language of the PIP for clarification purposes and to meet with him twice a week to discuss the success of the PIP. (*Id.* ¶¶ 44–45.) Despite not updating the PIP, Martinez met with Plaintiff once a week to discuss the PIP. (*Id.* ¶¶ 47, 56.) In these weekly meetings, Martinez did not provide Plaintiff with any feedback on or criticism of his performance. (*Id.* ¶¶ 56–57.) Additionally, on multiple occasions, Martinez rescheduled the meetings or took them in his car where he was unable to review Plaintiff's paperwork regarding his progress. (*Id.* ¶ 58.) Around this same time, Plaintiff sought clarification about his PIP from Rob Quell ("Quell"), Colonial Life's Vice President of Brokerage, who

informed Plaintiff that the manager at Colonial Life's Maryland branch wanted "more activity" from him. (*Id.* ¶¶ 50–52.)

In December 2023, Plaintiff and his team received notice that the way goal measurement was conducted would be "completely changing" starting the following year. (*Id.* ¶ 61.) Martinez told Plaintiff that this change would not impact his PIP goals. (*Id.* ¶ 62.) While Plaintiff was meeting weekly with Martinez, he received positive recognition from key stakeholders and business partners for his work. (*Id.* ¶ 59.) For instance, on December 7, 2023—the day before Plaintiff's PIP was set to expire—Mike Anza ("Anza"), Colonial Life's Vice President of Sales, sent Plaintiff a box of cookies "in appreciation for all the hard work Plaintiff was doing," and Anza's assistant sent Plaintiff an email expressing appreciation for his work. (*Id.* ¶ 63.) In his time working for Colonial Life, Plaintiff was ranked as a top five performer for Colonial Life's Preferred Broker Partner Program. (*Id.* ¶ 34.)

On December 8, 2023, Martinez terminated Plaintiff's employment without explaining how he failed to satisfy the PIP's terms and requirements, if at all. (*Id.* ¶¶ 65–67.) Similarly, without explanation, Plaintiff was informed that he would not receive his quarterly bonus. (*Id.* ¶ 68.) On December 13, 2023, Quell sent Plaintiff a fruit box for his work at Colonial Life. (*Id.* ¶ 69.) After his termination, Plaintiff was replaced by two younger individuals whom he had trained. (*Id.* ¶¶ 74–75.)

On May 29, 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 17-2 at 2.) Plaintiff checked the boxes for both age and disability discrimination in the EEOC Charge and listed specific allegations within the body of the Charge. (*Id.* at 3, 9–12.) The EEOC issued a dismissal and notice of right-to-sue for Plaintiff's Charge on June 24, 2024. (ECF No. 17-3.)

On September 20, 2024, Plaintiff filed suit, which Defendants moved to dismiss. (ECF No. 14.) Soon thereafter, Plaintiff filed his Amended Complaint (ECF No. 15), which Defendants also moved to dismiss. (ECF No. 17.) On January 22, 2025, the Court denied Defendants' first Motion to Dismiss as moot and told Plaintiff to file and serve a response to Defendants' second Motion to Dismiss. (ECF No. 18.) Accordingly, Plaintiff responded to the instant Motion on February 10, 2025 (ECF No. 19), to which Defendants replied on February 18, 2025 (ECF No. 20).

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims that fail to state a claim upon which relief may be granted. To survive a motion to dismiss, a complaint must contain sufficient facts that, when accepted as true and considered in the light most favorable to the plaintiff, state a facially plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Lewis v. Atlas Van Lines, Inc.*, 542 F.3d 403, 405 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] formulaic recitation of the elements of a cause of action will not do. . . . [A] complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–32 (3d Cir. 2008) (citation modified).

## III.   DISCUSSION

### A.   Exhaustion of Administrative Remedies for Counts III–V

Defendants move to dismiss Counts III, IV, and V on multiple grounds, including that Plaintiff failed to exhaust his administrative remedies and therefore cannot bring these claims before this Court.

The ADA requires the exhaustion of administrative remedies prior to the filing of a lawsuit. *See* 42 U.S.C. § 12117(a) (adopting Title VII enforcement scheme and remedies for ADA). To do so, a complainant must file a charge of discrimination with the EEOC for ADA discrimination allegations. *See Churchill v. Star Enters.*, 183 F.3d 184, 190 (3d Cir. 1999). A plaintiff "must wait until the EEOC issues a right-to-sue letter before she can initiate a private action." *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 413 (3d Cir. 2010) (citing *Burgh v. Borough Council*, 251 F.3d 465, 470 (3d Cir. 2010)).

Once the letter is received and the suit is filed, the claims presented to the court must have been included within the scope of the administrative charge filed with the EEOC because "[t]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can be reasonably expected to grow out of the charge of discrimination." *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 453 (3d Cir. 2006). In other words, the Court must determine whether the claims presented in the judicial complaint are "reasonably related to those in the administrative charge," by deciding whether there is a "close nexus between the facts" in the administrative charge and those in the judicial complaint. *Kopko v. Lehigh Valley Health Network*, No. CIV.A. 14-1290, 2014 U.S. Dist. LEXIS 149824, at *6 (E.D. Pa. Oct. 22, 2014). *See also Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 967 (3d Cir. 1978).

Therefore, "[w]here facts alleged in a complaint fall outside the core grievance addressed in the EEOC charge, the new claim is distinct and has not been administratively exhausted." *Gardner v. SEPTA*, 824 F. App'x 100, 105 (3d Cir. 2020) (citing *Antol v. Perry*, 82 F.3d 1291, 1295–96 (3d.Cir. 1996)).

The Court now addresses whether Plaintiff administratively exhausted the relevant counts.

1. **Failure to Accommodate (Count III)**

5

The Court finds that there is nothing in the body of Plaintiff's EEOC Charge that would have put Defendants on notice that Plaintiff was pursuing a failure to accommodate claim. In his Response in Opposition to Defendant's Motion, Plaintiff recites facts asserted in his Amended Complaint, including that he was placed on a "Developmental Plan" prior to being placed on the PIP and that he contacted the EAP after being placed on the PIP. (ECF No. 19-1 at 6.) However, neither of these allegations are included in Plaintiff's EEOC Charge. At most, the Charge alleges that Plaintiff requested that Martinez clarify the PIP's language and meet with him twice a week to ensure he was executing the terms of the PIP. (ECF No. 17-2 at 9.) This allegation fails to establish that Plaintiff sought this assistance *as a result of* his ADHD diagnosis. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999) ("[W]hile the notice [of a desire for an accommodation] does not have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation,' the notice nonetheless must make clear that the employee wants assistance for his or her disability."). Thus, Plaintiff's assertion that he did not sufficiently understand the PIP stems from Plaintiff ostensibly viewing Martinez as a poor communicator, *not* from his ADHD impacting his ability to do so.

Accordingly, the Court dismisses Plaintiff's failure to accommodate claim (Count III).

    2. **Retaliation (Count IV)**

Similarly, Plaintiff's retaliation claim is not within the scope of his EEOC Charge. In his Amended Complaint, Plaintiff asserts he was terminated in retaliation for "report[ing] his disability to management of Defendants and call[ing] the [EAP] seeking accommodation." (ECF No. 15 ¶¶ 116–17.) In his Charge, however, Plaintiff does not make this allegation. Indeed, in addition to leaving the box for retaliation unchecked, Plaintiff's Charge only mentions "retaliation" three times, all in a vague and conclusory manner: (1) "The above are just some examples of some of

the discrimination and retaliation to which Respondents subjected Petitioner to on a continuous and on-going basis throughout Petitioner's employment"; (2) "The Respondents have exhibited a pattern and practice of not only discrimination but also retaliation"; and (3) in the event that Plaintiff is an independent contractor rather than an employee, "Respondent owed and breached its duty to Petitioner to prevent the harassment, discrimination, and retaliation and is liable therefore for negligence." (ECF No. 17-2 at 11, 12.) Furthermore, Plaintiff's Charge does not include facts amounting to retaliation. As such, he failed to exhaust administrative remedies for his retaliation claim. *See Hewitt v. BS Transp. of Ill., LLC,* 355 F. Supp. 3d 227, 235 (E.D. Pa. Jan 11, 2019) (retaliation was not within scope of EEOC charge where the box for "retaliation" was unchecked, the body of the complaint averred no facts supporting a retaliation claim, and the statements in the charge that "this is a charge of discrimination and retaliation" and "respondents have exhibited a pattern and practice of not only discrimination but also retaliation" were unspecified and vague); *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 164 (3d Cir. 2013) (EEOC charge "did not encompass claims of retaliation" where "the box for retaliation was not checked" in the Charge and the Charge "failed to allege any retaliatory conduct").

Accordingly, the Court dismisses Plaintiff's retaliation claim (Count IV).

### 3. Unlawful Interference (Count V)

Plaintiff also did not exhaust his administrative remedies on his unlawful interference claim. Title V of the ADA makes it unlawful to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(b). Neither Plaintiff's Amended Complaint nor his EEOC Charge contain facts supporting the allegation that

7

Defendants coerced, intimidated, threatened, or interfered with Plaintiff as it pertains to his request for an accommodation. In his Amended Complaint, Plaintiff asserts that after he reported his disability to Martinez, "Martinez scoffed at Plaintiff and was not forthcoming as far as accommodations." (ECF No. 15 ¶ 127.) The Court cannot, and therefore does not, consider this allegation, as it is not mirrored in Plaintiff's Charge and thus lies outside the scope of the Charge. Moreover, while Plaintiff alleges in his Charge that Defendants did not respond appropriately to his requests for more meetings and clarification on his PIP, the Court sees no evidence illustrating that Defendants tried to prevent Plaintiff from making these requests. *See Revock v. Cowpet Bay West Condominium Assoc.*, 853 F.3d 96, 113 (3d Cir. 2017) ("[T]he prohibition on interference cannot be so broad as to prohibit any action whatsoever that in any way hinders a member of a protected class." (internal quotations omitted)); *Cori's Place v. Zoning Hearing Bd.*, 714 F. Supp. 3d 471, 482-83 (M.D. Pa. 2024) ("Having grouped 'interfere' with 'coerce, intimidate,' and 'threaten,' Congress must have contemplated something more affirmative—conduct akin to harassment, or 'persistent and intentional efforts to undermine [the] exercise of statutorily protected rights.'" (internal citations omitted)).

Accordingly, the Court dismisses Plaintiff's unlawful interference claim (Count V).

### IV. Conclusion

For the above reasons, the Court grants Defendants' Motion to Dismiss Counts III, IV, and V. An appropriate Order follows.

**BY THE COURT:**

**/s/ Kelley B. Hodge**

**HODGE, KELLEY B., J.**